**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. PIERRE HEBRON, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | 12 C 2228 |
| JOSEPH YURKOVICH, Warden of Hill Correctional Facility, | ) ) ) | Judge John Z. Lee |
| Respondent. | ) ) ) | |

**MEMORANDUM OPINION AND ORDER**

Pierre Hebron has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), challenging his conviction for aggravated battery with a firearm based on ineffective assistance of his appellate counsel and a violation of his due process rights. For the reasons set forth in this Memorandum Opinion and Order, the Court denies the petition.

**Factual Background[1]**

On April 18, 2006, while standing on a sidewalk, Richard Tolbert and his mother were speaking to Wendy Tolbert, who is Richard's aunt, as she sat in the driver's seat in her station wagon facing northbound on Avers Street. Although Tolbert's aunt testified that her car was pointed northbound on Avers, defense witness investigator Judith Lagiglio testified that Avers is a one-way southbound street.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), the state court's recitations of fact are presumptively correct in habeas proceedings. *Sumner v. Mata*, 449 U.S. 539, 547 (1981). Because Petitioner has not rebutted the presumption with clear and convincing evidence, see 28 U.S.C. § 2254(e)(1), the Court adopts the factual account as provided in *People v. Hebron*, No. 1-09-0337, slip op. at 1-5 (Ill. App. Ct. Nov. 24, 2010) (*see* Resp't's Ex. D).

At that moment, Tolbert and his aunt saw Pierre Hebron, whom they had known from the neighborhood for a long time, walk up to them with a gun in his hand. Although Tolbert and Hebron had been friends in the past, their friendship ended when they dated the same woman. Tolbert then put his mother in his aunt's car and told his aunt to drive away.

Hebron continued walking toward Tolbert and stopped when he was approximately two feet away. The two exchanged greetings. Then Hebron told Tolbert, "I don't like you." And Tolbert replied, "I don't like you." Then Hebron shot Tolbert in the leg, and Tolbert fell to the ground. Seconds later, Tolbert was picked up and driven to the hospital by friends who happened to be driving by.

Tolbert's aunt, who had initially obeyed his instructions to drive away, put the car in reverse when she heard the gunshot. However, she could not back down the street because the car that had picked up her nephew was behind her. She eventually followed that car to the hospital.

Detectives Roberto Garcia and Roger Lara spoke to Tolbert at the hospital. Based on the information and description that Tolbert provided, the investigation focused on a shooter named "Pierre," who had a tattoo of a "V" on his forehead. Detective Garcia compiled a photographic array, and Tolbert identified Hebron as the man who had shot him. Tolbert twice told the detectives that he was driven to the hospital by a man named Brandon Givens. At trial, however, Tolbert denied that Givens was even in the car that drove him to the hospital.

Sheila Regan, a crime victim advocate, also spoke to Tolbert at the hospital. According to Regan's notes from her interview, Tolbert told her that he was accidentally shot by an unknown assailant during a dice game and that the intended victim was someone else.

Brandon Givens testified that at the time of the shooting, he was hanging out with Tolbert shooting dice. According to Givens, during the dice game, an unknown African-American man walked up to Tolbert, and the man and Tolbert exchanged a couple of words. Givens testified at trial that the unknown man pulled a gun out of his waistband, shot Tolbert in the leg, and then left. In other words, contrary to Regan's notes, Givens stated that Tolbert was the intended, rather than an accidental, shooting victim. Givens testified at trial that Tolbert fell on the sidewalk where he was shot and that he and another person drove Tolbert to the hospital. At trial, Givens admitted that he did not want to see Hebron, with whom Givens had been friends since third grade, go to prison.

**Procedural Background**

Hebron was charged with attempted first degree murder, aggravated battery with a firearm, and unlawful use of a weapon by a felon arising from the April 2006 incident. In 2008, after a bench trial, Hebron was convicted of aggravated battery with a firearm and unlawful use of a weapon by a felon, and the court sentenced Hebron to twelve years of imprisonment. (Resp't's Ex. I, 2/25/05 Postconviction Hr'g Tr. at 3.)

On direct appeal, Hebron argued that the state failed to prove him guilty beyond a reasonable doubt. He asserted that the following discrepancies created reasonable doubt: (1) Tolbert's testimony regarding the shooting was contradicted by his own testimony and that of Givens, and failed to provide a motive for the shooting; and (2) Tolbert's aunt's testimony was contradicted by Givens and Lagiglio.

The state appellate court affirmed the conviction, holding that the physical evidence, *i.e.*, the blood stains and the bullet found on the street on the eastern side of Avers Street, supported Tolbert's testimony as to how he was shot in the street and contradicted Givens' testimony that Tolbert was

shot during a card game and immediately fell on the sidewalk. The appellate court emphasized that the trial court found Tolbert and his aunt's testimony credible as to the core issue, *i.e.*, whether they saw Hebron approach them with a gun in his hand and whether Tolbert saw Hebron as Hebron shot him.

Hebron petitioned for leave to appeal the appellate court's order affirming his conviction to the Illinois Supreme Court. *See* Resp't's Ex. E, People v. Hebron, No. 111648. The Illinois Supreme Court, however, denied the petition for leave to appeal. *See* Resp't's Ex. F, People v. Hebron, No. 111648 (Ill. 2011). Hebron did not file a post-conviction petition. *See* Pet. Writ Habeas Corpus 3.

Here, Hebron asserts the following grounds for habeas relief:

(1) ineffective assistance of appellate counsel on direct appeal because appellate counsel did not challenge trial counsel's (a) failure to cross-examine Tolbert's mother, Rose Franklin, and (b) refusal to allow Hebron to testify at trial;

(2) the government failed to prove him guilty beyond a reasonable doubt because Tolbert's testimony that Hebron shot him was contradicted by Regan's notes and Givens' testimony;

(3) the government failed to prove him guilty beyond a reasonable doubt because Tolbert's aunt, Wendy Tolbert, incorrectly stated that she was traveling northbound on Avers when Avers is a one-way southbound street.

## **Discussion**

Before considering the merits of a habeas petition, the Court must ensure as a threshold issue whether the petitioner has exhausted all available remedies in state court and avoided procedural

4

default during the state court proceedings. 28 U.S.C. § 2254(b)(1)(A); *see Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir. 1996). A claim is procedurally defaulted if a habeas petitioner failed to fairly present his constitutional claims at each level of state court review. *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004); *Momient-El v. DeTella*, 118 F.3d 535, 538 (7th Cir. 1997). "In determining whether an issue has been fairly presented to a state court, th[e] court has looked to whether the petitioner's argument '(1) rel[ied] on pertinent federal cases; (2) rel[ied] on state cases applying constitutional analysis to a similar factual situation; (3) assert[ed] the claim in terms so particular as to call to mind a specific constitutional right; or (4) allege[d] a pattern of facts that is well within the mainstream of constitutional litigation.'" *Momient-El*, 118 F.3d at 538 (quoting *Verdin v. O'Leary*, 972 F.2d 1467, 1473-74 (7th Cir. 1992)). "[T]he presence of any one of these factors . . . does not automatically avoid a waiver; the court must consider the facts of each case." *Verdin*, 972 F.2d at 1474. If a claim is procedurally defaulted, a petitioner must then establish that: (1) good cause exists for the default and actual prejudice was suffered as a result, or (2) the default would lead to a "fundamental miscarriage of justice." *Morales v. Johnson*, 659 F.3d 588, 604 (7th Cir. 2011); *see Bousley v. United States*, 523 U.S. 614, 620 (1998).

Hebron argues that his counsel on direct appeal provided ineffective assistance because he did not challenge trial counsel's failure to call the victim's mother as a witness and refusal to allow Hebron to testify at trial. Respondent counters that this habeas claim is procedurally defaulted because the issue of ineffective assistance of appellate counsel was never raised before the Illinois courts. Respondent is correct.

During his direct appeal, Hebron [?] did not raise this issue in his petition for leave to appeal to the Illinois Supreme Court even though he was represented by different counsel. Furthermore,

5

Hebron [?] never sought post-conviction relief, and thus he did not raise this issue during any post-conviction proceeding. *See Farrell v. Lane*, 939 F.2d 409, 411 (7th Cir. 1991) (holding that petitioner's failure to raise an ineffective assistance of appellate counsel claim on direct review or at any step in the post-conviction proceeding bars habeas review of the claim). Because Hebron has not even attempted to establish that there is good cause for the default, that actual prejudice resulted from the default, or that the default causes a fundamental miscarriage of justice, the Court denies the habeas petition based on a claim of ineffective assistance of counsel.

With regard to Hebron's remaining habeas arguments Respondent concedes that they are not procedurally defaulted and that Hebron has exhausted all available remedies. The Court thus proceeds to the merits of Hebron's argument that, for various reasons, the government failed to prove him guilty beyond a reasonable doubt.

Under AEDPA, a federal court "deferentially review[s] the decision of the last state court to address [petitioner's] claims on the merits." *Harris v. Hardy*, 680 F.3d 942, 948 (7th Cir. 2012). A federal court may not grant habeas relief unless the state court's adjudication of a claim "was contrary to, or involved an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d).

In *Jackson v. Virginia*, the Supreme Court held that a federal district court may review a habeas claim that the evidence presented at a state trial was insufficient to convict beyond a reasonable doubt. 443 U.S. 307, 318-19 (1979); *see Herrera v. Collins*, 506 U.S. 390, 401 (1993). However, "this inquiry does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 318-19 (quotation

6

omitted). Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. The conviction will stand unless "the record contains no evidence, regardless of how it is weighed, upon which a rational trier of fact could find guilt beyond a reasonable doubt." *United States v. Starks*, 309 F.3d 1017, 1021 (7th Cir. 2002).

Habeas claims made pursuant to *Jackson* present mixed questions of law and fact. *See Gomez v. Acevedo*, 106 F.3d 192, 198 (7th Cir. 1997*), vacated on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1997). Under the AEDPA, "a writ of habeas corpus may be issued for evidence insufficiency only if the state courts have unreasonably applied the *Jackson* standard." *Id.* at 199. To grant the writ, "the state court's application of law must have been objectively unreasonable." *Harris*, 680 F.3d at 948 (quotation omitted). This analysis "turns on whether the state court provided fair process and engaged in reasoned, good-faith decisionmaking when applying *Jackson*'s 'no rational trier of fact' test." *Id.* Lastly, "we presume that the courts' factual determinations are correct unless [the petitioner] rebuts the presumption by clear and convincing evidence." *Newman v. Harrington*, 726 F.3d 921, 928 (7th Cir. 2013).

The Illinois Appellate Court unanimously ruled that the evidence was sufficient to convict Hebron of aggravated battery with a firearm beyond a reasonable doubt. It first outlined the elements necessary for conviction under the Illinois statute. *See* Resp't's Ex. D, *People v. Hebron*, No. 1-09-00337, at 5–9 (Ill. App. Ct. Nov. 24, 2010). The court noted that, under Illinois law, a conviction for aggravated battery with a firearm requires the State to prove that the defendant committed "a battery, knowingly or intentionally by means of the discharging of a firearm . . . caus[ing] any injury to another person." 720 Ill. Comp. Stat. 5/12-4.2(a)(1) (West 2006). A conviction for battery requires

the State to prove that the defendant "intentionally or knowingly without legal justification . . . caus[ing] bodily harm to an individual." 720 Ill. Comp. Stat. 5/12-3 (West 2006). The court then reviewed the trial record and held that a rational factfinder could conclude that the essential elements of aggravated battery with a firearm were proven because Tolbert unequivocally testified that Hebron shot him in the leg at close range. *See* Resp't's Ex. D, *People v. Hebron*, No. 1-09-00337, at 8 (Ill. App. Ct. Nov. 24, 2010). In so doing, the appellate court reasonably applied the "any rational trier of fact" test espoused in *Jackson* when it affirmed Hebron's conviction.

The appellate court also properly applied the *Jackson* test when it held that it was up to the trial court as the trier of fact to determine the credibility of the witnesses. The trial court questioned Givens' credibility because he was a multiple convicted felon and a friend of Hebron who did not want to see his friend go to jail. The trial court also questioned Givens' credibility because the physical evidence corroborated Tolbert's testimony that he was shot in the street, rather than Givens' testimony that he was shot during a dice game on the sidewalk. In contrast, the trial court found that Tolbert and his aunt testified credibly about seeing Hebron, whom the victim and his Aunt had known for a long time, approach them with a gun. The trial court found that Tolbert also testified credibly that Hebron was the person who had shot him. In finding Tolbert credible, the trial court necessarily resolved any discrepancy between Regan's testimony regarding an unknown assailant in favor of Tolbert. The appellate court reasonably held that any other discrepancies in Tolbert and his aunt's testimony did not necessarily raise an inference that their testimony regarding Hebron was made of whole cloth. *Id.* at 9 ("After reviewing the record in the light most favorable to the State, this court cannot say that the only inference to be drawn from the flaws in the testimony is disbelief of the whole. A defendant's conviction is reversed only when the evidence at trial was so

unreasonable or improbable that reasonable doubt remains as to a defendant's guilt; this is not one of those cases.") (citations omitted).

In its analysis, the appellate court clearly identified the appropriate *Jackson* standard and carefully relied on evidence in the record to support its ultimate conclusion. The appellate court's application of the *Jackson* standard is well within the bounds of reasonableness. *See Gomez*, 106 F.3d at 201 (stating that if the state court's application of the *Jackson* standard is reasonable, "it must be respected–not because it is right, or because federal courts must abandon their independent decision-making, but because the grave remedy of upsetting a judgment entered by another judicial system after full litigation is reserved for grave occasions" (quotation omitted)).

In sum, the Court holds that one of Hebron's grounds for habeas relief, ineffective assistance of counsel, is procedurally defaulted and that Hebron has failed to establish cause for the default or that prejudice or a fundamental miscarriage of justice results from the default. As for Hebron's remaining grounds, the Court holds that the Illinois appellate court reasonably applied the *Jackson* standard. Therefore, the Court denies Hebron's petition for writ of habeas corpus.

## **Certificate of Appealability**

Under Rule 11 of the Rules Governing § 2254 Cases, this Court must consider whether it should issue a Certificate of Appealability when entering a final order adverse to a petitioner. Issuing a certificate is appropriate only if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If a court denies a petition on procedural grounds, a petitioner must show that both the procedural ruling and the underlying

9

constitutional claim are debatable. *Id.* at 484.

That Hebron's habeas claim based on ineffective assistance of counsel is procedurally barred by his failure to present it before the Illinois courts is not debatable. Furthermore, given that the Illinois Appellate Court identified the *Jackson* standard and carefully analyzed the evidence to conclude that a rational trier of fact could find the elements of the offense proven beyond a reasonable doubt, Hebron has not established that reasonable jurists would disagree with the Court's assessment of his *Jackson* claims.

## **Conclusion**

For the reasons provided in this Memorandum Opinion and Order, the Court denies Hebron's petition for writ of habeas corpus [7] and declines to issue a Certificate of Appealability. This case is hereby terminated.

**SO ORDERED**                                    ENTER: 8/20/15

*/s/ John J. Lee*

_____
**JOHN Z. LEE**
**U.S. District Judge**